This is Kaskaskia Land Co. v. The Vandalia Levee and Drainage District, number 518-0403. Are counsel ready? Ready. You may proceed. Good morning, your honors. Your honor, coding counsel, members of the audience, may it please the court. My name is Ronald Lee Osmond of the firm of Ronald Lee Osmond & Associates, and I have the honor of representing Kaskaskia Land Co. today in this appeal. This is an appeal from the Honorable Associate Judge Kevin S. Parker's ruling of July 19, 2008, dismissing Kaskaskia Land Co.'s complaint for inverse condemnation with prejudice. The court dismissed the case with prejudice in accordance with 735 ILCS 5-2-619. While the court did not specify in its ruling whether it was dismissing it under 5-2-619-A3 or in accordance with 735 ILCS 5-2-619-9 or as well as 735 ILCS 5-2-608, which is the counterclaim statute. Since it didn't specify, but it did discuss all of those items in its order, I'm going to address all of those items in today's presentation. While not directly involved in this case, prior litigation regarding the Pecan Island levees are helpful in understanding some of the history and background. And I know at least two of the members of this court are familiar with some of that history. Specifically, the court will be asked to reference the following pleadings and dates in Clause No. 08-CH-19 filed in Fayette County and the Fifth District Appellate Court Cases Referencing Notes. Mr. Alton, on that case, is that case still pending? We are set for trial on April 22nd and 23rd on the issue of damages. What would prevent you from raising the issues raised in this appeal in that case? The judge has specifically ordered that in accordance with the mandate from the Fifth District that the only thing he's going to consider in that hearing is damages. Strictly damages. Thank you. Okay. That original case was filed on April 18th of 2018 and that's C-19-48 for the reference. At that time, my client was not a party. The appellate court decision overturning the circuit court's decision and finding a prescriptive easement was on 12-04-2012, C-109-120. At that time, my client was not a party. My client did not become a party until sometime prior to August 8th, 2015, prior to August 25th, 2018. The last appellate court ruling and remand in 08-CH-19 was March 4th of 2016. KLC filed this action for intent versus condemnation approximately a year and a half later on August 3rd of 2017. An Illinois drainage district is prohibited by the Illinois Constitution from taking or damaging lands without making compensation therefore. That's the Bradbury case. Bradbury v. Vandalia Levy District and Vandalia Levy Drainage District. It's a 1908 case filed in law, Supreme Court of Illinois. It's very instructive because this is the same defendant, the Vandalia Levy, Vandalia Drainage District. Also cited in my papers and the sites are on pages 5 and 39 of my brief, is controlling the wall. Juvenile v. Janesburg Drainage District, again a 1903 case. Bay Bottoms Drainage District v. Cache River Drainage District, a 1920 case out of Massack County. And Peters v. Milk's World Special Drainage District, which is a 3rd district case of 1993. The Milk's case stated, since the drainage district is a public agency, it is prohibited by the Fifth Amendment of the United States Constitution from taking private property for public use without paying just compensation. No matter how minute the intrusion and no matter how weighty the public purpose behind it, we have required compensation. The Illinois Supreme Court, which is the Bradbury case involving the Vandalia Levy District, specifically held that under the Constitution, private property cannot be taken or damaged for public use without just compensation and this gives a right of action. The Illinois Supreme Court additionally stated in Cadillac v. Chicago Burlington and Quincy Railroad Company, that in Section 2 of Article 2 of our Constitution, speaking of the Illinois Constitution, provides that private property shall not be taken or damaged for public use without just compensation. This is a provision of our Constitution that no legislative act and no decision of any court of this state can nullify. By its July 19, 2018 order, which is C-555 and 554, the Fourth Circuit District Court of Fayette County nullified this provision of the Constitution and the Fifth Amendment of the Federal Constitution by holding that there is, quote, no specific authority binding on this court to persuade it in the exercise of its discretion to find a cause of action for compensation for a prescriptive easement obtained by a public or quasi-public entity found to have come into existence through 20 or more years of adverse use and dismissed the complaint with prejudice. Interestingly enough, there was no evidence adduced regarding a public entity at all. So the judge has actually expanded on and has now approved that a public or a quasi-public entity can take property by inverse condemnation on 20 years and not have to pay anything. Did this court declare that it was eminent domain taking? No. No, this is inverse condemnation. I have brought it. But no, he didn't rule that it was eminent domain taking. But inverse condemnation is the complaint that I have filed. You brought up his ruling, and it seems to me like the wording of his ruling seems to say that he found no cause of action. And trying to square that with the fact that this was a 2-6-19 motion, that that would seem to be a ruling based more on 2-6-15, do you have anything to say about that? Well, Your Honor, I have a couple things to say about the ruling. And it is confusing. It is confusing. And, you know, I agree with you that it was more in the area of a 2-6-15 and dismissed it with prejudice immediately. But I don't know, and the court doesn't know, there's nothing to indicate whether he was ruling under A-3 or A-9, a combination of both, or was he under the counterclaim statute? He seemed to put quite a bit of weight on the counterclaim statute. So we really don't know what he was ruling on. Can you explain to me further what you just stated, that it seemed to be more the nature of a 2-6-15? Well, the order sounds to be that. The order sounds to be that way. That there wasn't a cause of action. But then whenever you read paragraph 8 of his order, to be clear, this court distinguishes a public taking by inmate domain for which compensation is due from a prescriptive easement acquired as a matter of law over years of uninterrupted adverse use by the public or quasi-public, he's throwing in public nouns, added that, reinforcing this court's ruling is the fact that KLC, the current owner and his predecessor in title, have full knowledge of the subject lands propensity to flow to acquiring title, and its subsequent use of subject property have been found to constitute a private nuisance and a matter of law. But, Mr. Osmond, you have to agree that, however, the trial court characterized the petition and it doesn't control how we view the appropriate. No, I agree with you. You can do whatever the record supports. I understand that. I'm trying to understand what he did. And if this court determines something on the record and there's something to support it that's different, fully understand you can turn it over on anything that you want. What I'm pointing out, though, is that he has dismissed this case and in paragraph 8 he has ruled, he has ruled unquivertly that a drainage district or quasi-public cannot be paid for an easement that has been taken by, you know, by prescriptive easement. That flies in the face of the Supreme Court, the Supreme Court, the Illinois Supreme Court, the Fifth District, the Third District, and all the supporting cases. Cannot do that. That would have to be a 9B that he's doing there. When you move up to paragraph 6, he starts talking about primary purpose of 735A3. Well, in that particular ruling he says that the causes of action in each manner involve the same parties in interest, actual or named. That is not the standard and that is not what the statute says. The statute says that there is another action pending between the same parties for the same cause. It's not. It's not. It's added actual or named. And the same issues instead of cause. And then he starts talking about going into that we had an opportunity and nobody filed a counterclaim. We could not file a counterclaim. We were only a party to this action until 2015. Then it's in appeals. We had no opportunity ever to file a counterclaim. Whenever the appeal was over, then we filed an action for adverse condemnation. That goes to the matter of abuse of discretion. The record shows that we didn't have an opportunity to do that. Yet the judge seems to put great weight on that and talks about that we didn't file a counterclaim. So he's using his full discretion. And again, we don't know from his order whether or not he has decided that that in his discretion, he's dismissing it with prejudice because of that, because of C3 or 9 or A3 or 9 rather. So the order is a little confusing to me because when you get down to it, you know, it says the defendant's motion to dismiss plaintiff's complaint pursuant to 735 ILCS 5 slash 2 dash 619 granted with prejudice. But his rulings above are conflicting. And also, your honors, two things. Whenever he talks about in 8 that reinforcing his decision is the fact that KLC took the property, knew it was propensity to flood, and then subsequently to its use, it was found to have a private nuisance. That's of no moment to any issue in this case. That has nothing to do with inverse condemnation. It has nothing to do whether or not the property was subject to flooding. And it has nothing to do whether or not later they found this court found, not this, the first court found that there was a private nuisance that was caused by Fred Keck, not McClatch. They weren't even a party at that time. So it's of no moment. So when you look at the record, and I understand that the judge, when he's using his discretion, doesn't have to make findings. But the record has to support that he didn't abuse his discretion. And I believe that this record supports that he abused his discretion. If he ruled in effect for A3, and in A3, these are not the same parties. It's not the same cause. Parties are different than whenever it was originally filed. The issue of compensation has never been before a court. It was raised as a defense, affirmative defense, and the appellate court ruled that it wasn't before and wasn't going to rule on that particular issue. So, you know, I believe that the court, this court should overturn this and let us go on with the lawsuit. Let me get back to my outline. Well, just to recap on that issue, in my view, what Judge Parker did in his room, he actually ignored and overturned a new ruling. The United States Supreme Court decision, Illinois Supreme Court decision, 1908, involving the same defendant. Fifth district cases, third district cases, a myriad of cases supporting those, and they're all cited in my brief. And he then ruled that because he could not find a case right on all fours for 20 years, that he was going to dismiss it with prejudice. Knowing all the precedent, I've never had a case that I've had this kind of precedent to where, at least in my view, it had been misapplied by the judge. Well, looking at that Bradbury case, it is a different situation altogether where you had the building of a levy, and immediately thereafter, within three or four years, the landowner had sued him for the taking of his land, and there was no acquiescence or prescriptive easement. So that was an entirely different situation here than what you had in the Bradbury case. The issue of the Bradbury case was whether or not it was a quasi-public organization and whether they had to pay. That's the primary issue. The difference was also a taking as opposed to a prescription as far as letting it go for 20 years. And I'm suggesting there's a difference. I understand that you're suggesting that there is no difference. Well, I'm suggesting that the case law is clear in Illinois that an easement is the same as a taking. When you have an easement, no matter how you acquire that easement, that's a taking. Case law, it's cited in there. That is a taking. We all know the bundle of rights. We all knew this in law school, the bundle of rights in property. You know, you have real property, you have easement, you have air rights. Easement is a property, and the case law is clear in Illinois. The Massachusetts County case, that was an easement case, and they may have paid for the easement because they were using the easement. Now, it didn't go 20 years, but it went a couple of years. So there's no difference in the principle, the legal principle, that if you take, if you're a quasi-public company, a corporation, and you take land, now, if this was a prescriptive easement from a landowner, you don't have to pay. So your position is an easement is an easement is an easement. There's no distinguishing factors, and a prescriptive easement is just like any other easement. It's just a different way, it's just a way that you, prescriptive easements are used in private transactions. If you have it for 20 years, you don't have to pay the landowner. That's the law. This is a quasi-public entity that is taking property for a public purpose. And the Constitution of the United States and the Constitution of Illinois says when you take property, i.e., or I believe, easement, you have to pay for it. It doesn't say, it doesn't carve out anything for 20 years. And keep in mind, this easement was not, was not established until the court ruling in 2012. The court seems to go back and talk about how long it's been in existence. There was no easement determined. There was no written easement. The appellate court in 2012 determined that, and that's the time that the easement sprung into existence. I think my time is about up. Thank you, Your Honor. Thank you. Good morning. Good morning, counsel. May it please the court. So, starting back to... Counsel, can you identify yourself, please? Oh, I'm sorry. I am Emily Scott. I'm representative of Vandalia Levy and Drainage District. Thank you. Okay. So, the case law that KLC has cited about a taking is correct. However, this is not a taking. The Vandalia Levy and Drainage District has a prescriptive easement that allows water to flow through the land. This court has already decided that the unpermitted levees built on Pecan Island are causing a nuisance and interrupting with the natural flow of the civil law of drainage. And so, it's pushing water upstream. The case law that KLC has cited, Bradbury versus the Vandalia Levy and Drainage District, is on point to what KLC is doing to Vandalia Levy and Drainage District. So, he's trying to say that because they're a government entity, they should have to pay, even though it's his client that is doing the...or it's KLC that's the bad actor. So, they put up levees without getting a permit, and they're causing water to go upstream. This has already been decided. So, if you look at that case, Bradbury, it kind of analyzes when you can sue a government entity. So, if you kind of take out the fact that the Vandalia Levy and Drainage District is the government, they would just be a person who's being damaged. So, that's what's going on here. They're being damaged, the Vandalia Levy and Drainage District. It's already been decided. And the case that's still ongoing, set for trial in April, KLC has already appealed that, and they're a party to the case. It's the same facts, same causes of action. KLC has pled that there is an affirmed offense based off of the exact same cause of action in this second case that it filed trying to seek damages. So... Let's see. Can I go back to this argument? Yeah. Counsel said, hey, look, we came into the case late, it was on appeal, we didn't have a chance to file a counterclaim. What's your response to that? Well, if you look at the history of the case, it was originally filed against Fred Keck. Fred Keck sold the property eight months before trial to KLC. So, they were the owners before trial. They didn't jump in, file any sort of claim. They didn't notify the Vandalia Levy and Drainage District that they were the current owner. Is there still some ownership interest with Mr. Keck? It's not at this time. But when the trial occurred, he transferred it to his son, Fred Keck. I'm sorry. His son and friend. So, this court has already ruled that they were adequately represented at trial. So, KLC could have brought a claim at that point. And Fred Keck could have brought a counterclaim based off of this claim of inverse condemnation. But I think going back to Judge Parker's ruling, there's three different kind of theories on why this current case should have been dismissed. It's because there is no cause of action that can be brought to prove the inverse condemnation. So, do you agree with what Mr. Osmond told me concerning the issue of the possible counterclaim in 08-CH-19 that the judge has already ruled that the only thing going to trial is damages? There will be no counterclaims in that case? Well, I think KLC is bringing the claim. And so, I don't know why there couldn't have been a counterclaim. They're allowed to file pleadings. They filed an affirmative defense. KLC is a party in that case? Yes, absolutely. They're, yes. So, it's identical parties. And they brought the same exact complaint as an affirmative defense in the ongoing case set for trial and damages in April. Over the same land, same property. It's just the same facts. What about the question I asked about the judge's ruling that seemed to suggest that he found no cause of action to exist, which seems to be a ruling to dismiss it under 2615, yet the motion and the other part of his order seem to find it being dismissed under 2619. That's confusing. How do you answer that? Well, under 2619A9, claims are barred by other affirmative matters voiding the legal effect or defeating the claim. I think the judge is saying because their actions caused a nuisance, because the appellate court has already ruled that there's no way that there could be a taking because of the nuisance, the violation of the civil law of drainage, there's no compensation awarded for a prescriptive easement. There's no claim. So it falls under A9 of 2619. I'm not sure I follow that, but thank you. I guess going back to the reason why there's no claim, it's the three reasons that a prescriptive easement is not a taking. And so the case law cited in KLC's reply brief, it dealt with the prescriptive easement. One was in place where water is flowing through land, and then the person had the prescriptive easement expanded on it and replaced tile to where now they are entering the land and now there should be compensation. But that's distinguishing what's going on here because the prescriptive easement, it's just allowing water to flow through Pecan Island to where it just gives it a right. They're not going on to the land. They're not modifying anything. What the Vandalia Levee and Drainage District is doing is saying, your levees that are obstructing the flow of water need to be removed because we have this right for water to flow and not go back upstream and damage our land. So because that's not a taking and it's causing damage upstream, it's a nuisance, and it's violating the civil law of drainage, their actions should not be compensated saying that a government entity is taking their land because the government said your permit, I'm sorry, your levee that you constructed without a permit should be taken down. So there's no taking involved in what's going on with Pecan Island. And the levees are still up to where there's no harm. There should be no compensation for nothing's changed. The levees are still up? Yeah. You're talking about the original levees? Sorry, the perimeter levees built by Fred Keck are still, they haven't been removed. So they're asking for compensation. Oh, I see what you're saying. You're saying the harm is still ongoing towards the district rather than vice versa. And also, they were supposed to apply for a permit, which was never applied for, to where? That's under the DMRA. So Vandalia Levee and Drainage District don't issue permits. They haven't denied that. So there's a step that KLC needs to go through to have levees there, and they're not doing it, and it's not the Vandalia Levee District that is stopping them. They have to go through another government entity to qualify to even get a permit to have these levees that are causing damage to the Vandalia Levee and Drainage District. I thought that the trial court had ordered gaps to be dug in the levees and that that had been done. The trial court did order that, but that didn't stop the nuisance. There's still ongoing damage to the Vandalia Levee and Drainage District. Isn't that an issue that remains to be determined in the trial court that's pending? Well, that is an issue in the other case that should be resolved there as well as this issue. So yes, I mean, it should be resolved. That's not an issue before us now, is it? Well, but what I'm saying is that it's an ongoing issue in a different case. I'm kind of making a jump. I'm sorry about that. To where it goes to the facts of why this is dismissed under 2619A9. Because of that ongoing case, KLC should be barred from bringing this again as an affirmative action, affirmative case. So based off of that decision by this court, and that should be decided by the trial court, which is still going on. I lost my train of thought. It's not proper to bring it in a second case. So that's why this whole matter should be involved in the original case. It shouldn't be a separate issue with the separate same parties, same facts. And so the trial court was proper to dismiss this case. I go back to, I think Mr. Osmond said, we never had a chance to raise the other issue. We got it so late and then it was on appeal. Do you agree with that? No. They had an opportunity. So the issue with the land being transferred from Keck to KLC was already looked at by this court. There's already been a final ruling on that. Right, right. So there's been two rulings in 08-CH-19. And this court found that KLC's rights were adequately represented by Keck. Because KLC at that time, actually it was Keck Land Company, and they just changed the name to Kaskaskia Land Company. And so KLC was present knowing what was going on during the trial. And this court has already found that they should have. And it was transferred to them eight months before trial, knowing that the trial was going on. This court looked into the divorce of Vanessa Keck and looked into the transfer of property based off of, it was sold for inadequate consideration. Fred Keck's son and his friend testified that they were planning on giving it back to Fred Keck. And so it wasn't a proper transfer. It seemed like they were trying to just hide what was going on. Didn't Fred Keck continue to manage the property for some period of time as well and farm it? Right, I believe so. After the sale? And his son and friend promised to give him the property back. And that was testimony. Right. And that was looked at by this court in the second appeal of KLC, who said that they weren't a proper party to the ongoing case. And this court already found that they were, and their rights were represented. All right. I think I have touched on everything that I wanted to say. Do you have any other questions for me? Okay. Well, I guess going, I want to just recap that the trial court dismissed KLC's complaint for three reasons based off of 619. First, there's an ongoing litigation with the same parties, same facts, to where they had an opportunity to raise the issue of seeking just compensation for the inverse condemnation. And they did raise it. It's raised as an affirmative defense. And so they had every opportunity to bring it up, have, and it's being decided in the other case. So this is absolutely duplicative of what's been ongoing. Then there's an issue of res judicata. The trial court didn't rule on this issue. But if you look at the two appellate court decisions and read those together, then that is the law of this case. So there's a transactional test that separate claims will be considered, the same cause of action, if they arise from the single group of operative facts, regardless if they assert different theories of relief. And so the fact that Fred Peck didn't raise a counterclaim for what KLC is trying to do here in this case, there was an opportunity to do that. And it just wasn't done. So at this point, now bringing an additional case is just duplicative when there was a right to already bring the claim before. And it is being raised. And so, and then again with A9, there's just no cause of action, there's no facts that KLC can prove to support their claim that a prescriptive easement is a taking. It's not a taking. It was in existence before they had ownership. And the fact that this court has already decided, based off of three theories, that the levies created are causing a nuisance. They're violating the civil law of drainage. And they're obstructing the natural flow of water. Make it to where KLC should not be compensated for illegally, or having levies on their land that were illegally constructed. They don't just get to do whatever they want with their land when they're damaging neighboring properties. And so, again if you look at the Bradbury case, it basically says if you're damaging, if you're throwing water back upon the land of another, then that person is going to have a right of action against you. So it analyzed the fact that it was the government who was the person who was damaging other land, so that was the taking. But in this case, the government is the one being harmed, so why would they have to compensate somebody for obstructing their land? It doesn't make sense to where there shouldn't be any sort of compensation for telling somebody that they've illegally put something on their land that's harming their neighbors. Thank you. Thank you, counsel. Rebecca? Thank you, Your Honor. I want to first clarify some things and factual inaccuracies that counsel has indicated. The status of 08CH19 is this. It is set for trial on the 22nd and the 23rd of April for damages only. The issues that counsel has just raised about ongoing damages and being compensated, all those issues were specifically denied by the judge in that case. Specifically said, no, that's not voluminous filings on everything she just said. Counsel has had the court engage in a review of an appellate court that we've already had an argument on. It's of no moment to this case. Now, the matter of representation, that is a big issue in this case. This court did rule that Kaskaskia Land Company had been adequately represented under the doctrine of representation in the litigation in the circuit court. That's a long way from being, meaning that they are a party for the purposes of A3. For example, when could have Kaskaskia Land Company gone into the circuit court or the appellate court and filed a counterclaim? They couldn't. They couldn't file it prior to the appellate court ruling adding him as a party. They couldn't file it until after the appeals were over. So this is all, they're trying to equate the doctrine of representation as equates to for A3 for being a party. And that's not the law. It's completely different. How could my client, I mean we've been screaming since 2013 to get a hearing, so we can say something. The courts have not let us yet. I understand the ruling on representation. That was because Fred Peck's son sat in the court case and at one time he didn't participate other than taking him out to show him the land on a view. And the court thought that that was proper representation for Kaskaskia Land Company. Okay, we lost. But we didn't lose. The court didn't rule that they were a party. And we had no, absolutely no opportunity to just look at the record and then say well when could Kaskaskia Land Company file this counterclaim? And the answer is never. We could only file the claim after all the appeals were done in 08. Now, and if you look at the record, that's discussed whenever they keep saying that we have filed it as an affirmative defense. I'm not going to read the record. I'm going to cite to it C3840 and C7778. That's where the appellate court in paragraphs 38 and 39 discuss the affirmative defense and discuss the payment for inverse condemnation. And when you read those, you see the appellate court did not rule on that. They said it's not before us. So they didn't rule it. So whenever they get up here and say it was an affirmative defense, they rule it was inaccurate. It is said that KLC is the bad actor. Fred Keck and the appellate court and the circuit court is the one that constructed the lilies. Not Kaskaskia Land Company. They never constructed the lily. They're not a bad actor. They just bought the property. And by the way, this could have all been prevented if they would have just filed a misdemeanor action. There's no misdemeanors notice filed. They complained about they didn't know about the transfer. Well, if they just filed a misdemeanor action, they'd know about the transfer. So Kaskaskia Land Company is not a bad actor. They've not put one shovel on those letters. But yet they call them bad actors. It's not the same facts. It's not the same case. Compensation was never discussed. Kaskaskia Land Company wasn't a party until 2015. So I'll stand on the issue of race judicata.  Thank you, John. Thank you, counsel, for your arguments. We'll take this matter under advisement.